155 So.2d 15

**LOUISIANA TANK TRUCK CARRIERS, INC., et al.**

**v.**

**LOUISIANA PUBLIC SERVICE COMMISSION.**

No. 46617.

June 28, 1963.

Joseph H. Kavanaugh, Baton Rouge, for appellant.

Howard B. DeJean, Jr., of Garland, DeJean & Ledet, Opelousas, for intervenor.

Harold R. Ainsworth, New Orleans, for appellees.

FOURNET, Chief Justice.

Clayton J. Guilbeau, doing business as Guilbeau Oil Company, and who, pursuant to a contract with Shell Oil Company transported in his own trucks from Norco to Opelousas petroleum products distributed by him in St. Landry parish under an exclusive franchise he had held with the company for some 30 years, for which hauling he was allowed the lowest available rail or truck rate,[1] applied to the Louisiana Public Service Commission for a review of its ex parte order of May 16, 1960, reducing this rate from 1.26¢ to .83¢ per gallon on the written request of Louisiana Tank Truck Carriers, Inc.[2] This corporation intervened in the proceedings, challenging, through exceptions of no cause and no right of action, the commission's jurisdiction to consider Guilbeau's application. After these had been overruled and the matter heard on the merits, the commission issued its

order of December 5, 1961, restoring the tariff to 1.26¢ a gallon. Louisiana Tank Carriers, Inc., joined by three motor truck carriers,[3] thereupon petitioned the Nineteenth Judicial District Court for a review of this ruling on the record as made up before the commission. Guilbeau prosecutes this appeal from the court's ruling maintaining the exceptions and annulling the order of May 16, 1960, restoring this tariff to its original level, as established in 1952.

In his written reasons for judgment maintaining these exceptions, which are predicated on the contention the commission's supervision is limited to common and contract carriers and it therefore had no authority to consider the application of Guilbeau—a private carrier—the trial judge very aptly observed that should the reduced rate be detrimental to the public interest the commission could, itself, "take notice of such fact and order a hearing." However,

1. The petroleum products purchased by Guilbeau from Shell's refinery at Norco are billed at the prevailing price f. o. b. Opelousas, but under separate contract, inasmuch as Guilbeau was transporting the purchases made at the refinery to his Opelousas facilities in his own equipment, he was allowed a rebate or allowance based on the lowest available rail or truck rate.

2. In 1951 the tariff on petroleum products between Norco and Opelousas was 1.19¢ a gallon. In that year, Louisiana Tank Truck Carriers, Inc., applied to the commission for an across-the-board increase of 6% on all truck tariff on such products because labor, equipment, and administrative expenses had so spiraled even

this would "hardly equalize the increased cost of operation," figures being submitted in substantiation. By order of March 21, 1952, the increase was granted, with the result the tariff between Norco and Opelousas was raised from 1.19¢ to 1.26¢ a gallon on petroleum products. It is freely admitted by witnesses testifying for the intervener before the commission that the reduction to .83¢ was secured for the express purpose of making it impossible for Guilbeau to continue to haul his own products without loss, and thus permit a common or contract carrier to take over this business.

3. Hearin Tank Lines, Inc., W. M. Chambers Truck Line, Inc., and Younger Transport, Inc.

we think the trial judge erroneously concluded the commission was without power or authority to order the hearing in the instant matter on the application of Guilbeau.

Although motor carriers are not specifically mentioned as among the carriers the Louisiana Public Service Commission is authorized by Section 4 of Article VI of the Constitution of 1921 "to supervise, govern, regulate and control," [4] the right of the legislature to place additional utilities and carriers within the purview of the commission's authority is specifically declared therein to be unlimited. In accordance with this authority the legislature not only made common and contract motor carriers using the public highways and bridges of the state subject to the commission's regulation, but also stated it to be the policy of the state that the traffic over and condition of the highway system of Louisiana rendered it imperative that uniform, reasonable, and just regulation of transportation by motor carriers be employed "to conserve the interest of the general public, * * * safeguard the needs of the public for adequate

motor transportation, prevent irresponsible operation detrimental to the general welfare, * * * adjust, correlate and coordinate the various transportation agencies using the highways so the public will be given the benefit of the most economic and efficient means of transportation *without discrimination against legitimate forms of transportation, and foster sound economic conditions among all classes of carriers."* R.S. 45:161. (Previous laws covering this subject are to be found in Act No. 292 of 1926 and Act No. 301 of 1938.) (The emphasis has been supplied.)

Furthermore, the commission, pursuant to its specific constitutional authority,[5] has adopted rules governing proceedings before that body wherein it is specifically provided that among those who may appear before the commission are "complainants * * * protestants * * * applicants,[6] and petitioners," [7] and, further, that such parties "may appear and be heard in person or be represented by attorney at law or in fact.", Sub-section B(1), under the heading "Parties," of the Rules of Practice before the Louisiana Public Service Commission.

4. This was obviously due to the fact that motor carriers on the public highways as we know them today were of no great concern in 1921, if, in fact, in existence as such.

5. The pertinent portion of Section 4 of Article VI of the Constitution of 1921 provides: "The said Commission shall have power to adopt and enforce such reasonable rules, regulations, and modes

of procedure as it may deem proper for the discharge of its duties * * *."

6. Sub-section B(2) provides: "In applications for relief the parties by whom or on whose behalf such relief is sought are termed applicants."

7. Sub-section B(13) provides: *"Others seeking relief* are styled petitioners." (The emphasis has been supplied.)

· We think Guilbeau, in his appearance before the commission, qualified as both an applicant and a petitioner under the very definition given such terms by the commission in these rules. And even were it to be conceded this is not explicit in such definitions, then the commission, with its constitutional authority and discretion with respect to the adoption of reasonable "rules, regulations, and modes of procedure * * for the discharge of its duties," [8] having interpreted its rules as permitting the commission to consider the application of Guilbeau by overruling the exceptions of no cause and no right of action, has thus amended them to conform with such interpretation. Compare, State ex rel. Klotter v. Police Board of New Orleans, 51 La.Ann. 747, 25 So. 637. Certainly if Guilbeau as a private. carrier, was without right to appeal to the commission for a review of the order of May 16, 1960, issued without a hearing upon the mere written letter of Louisiana Tank Carriers, Inc., not a common. or contract carrier but, according to its petition of intervention before the commission, "the publisher of the Motor Freight Tariff referred to in" Guilbeau's application, then this corporation was, itself, without right to request the reduction of the tariff to .83¢.

 Unquestionably, as the district judge conceded, the commission had the au-thority and power to consider and review any of its previous orders whenever in its opinion it was in the public interest to do so. But this authority is, under the statutory provision, not limited to the public interest, or to the safeguarding of the needs of the public for adequate motor transportation. It is, in addition, as above pointed out, necessary to prevent irresponsible operation detrimental to the general welfare, as well as to "adjust, correlate and coordinate the *various transportation agencies* using the highways so the public will be given the benefit of the most economic and *efficient* means of transportation *without discrimination against legitimate forms of transportation,* and *foster sound economic conditions among all classes of carriers."* And it is immaterial whether the necessity for a review of the order of May 16, 1960, stems from the commission's personal knowledge, or was called to its attention by an individual, organization, association, or carrier, whether private, common, or contract, the courts not being authorized, in such instances, to substitute their judgment or otherwise interfere with the commission's actions save and except when they are found to be arbitrary and capricious, or reflect a clear abuse of the power reposed in it by constitutional and statutory provisions.[9] (The emphasis has been supplied.)

8. Section 4 of Article VI of the Constitution of 1921.

9. Rubion Transfer & Storage Co., Inc. v. La. Public Service Comm., 240 La. 440,

Having reached the conclusion that the exceptions of no cause and no right of action were erroneously maintained by the trial judge, and this court having appellate jurisdiction only, the case will have to be remanded to the lower court for the trial judge's consideration of the matter on the merits.

For the reasons assigned, the exceptions of no cause and no right of action are overruled, and the case is hereby remanded to the lower court for a consideration of the merits in accordance with law and not inconsistent with the views herein expressed. All costs of this appeal are to be borne by the appellees; all other costs are to await the final determination of this matter.

HAWTHORNE, J., dissents with written reasons.

HAWTHORNE, Justice (dissenting).

In my view the district judge properly sustained the exception of no cause or right of action, and I am in full accord with his opinion, which reads in part as follows:

" * * * The authority of the Louisiana Public Service Commission to regulate common carriers is set forth in Louisiana Constitution, Article VI, Section 4.

"LSA R.S. 45:161 sets out the policy of the Commission and states in part that the business of operating (for hire) motor vehicles as *common* or *contract* carriers for compensation upon the public highways is a business affected with a *public interest;* that regulation of this business be employed to conserve the *interest* of the *general public;* to safeguard the needs of the *public* for adequate motor transportation; that the *public* be given the benefit of the *most economic* and *efficient* means to transportation. (Emphasis added [by the trial judge].)

"It is a general rule that orders of the Public Service Commission, like those of other administrative bodies, shall be accorded great weight and will not be overturned by the Courts on appeal in absence of clear showing of abuse of power.

"With this in mind, this Court will first examine the exception of no cause or no right of action overruled by the Commission. The question presented therein was whether or not the Public Service Commission, on petition of a *private* carrier, not under the jurisdiction of the Commission, may increase the rates set forth by previous order. There is no evidence that this rate increase will benefit the general public in any manner. To the contrary, any increase

123 So.2d 880; Texas & Pacific Ry. Co. v. La. Public Service Comm., 240 La. 669, 124 So.2d 902; United Gas Pipe Line

Company v. La. Public Service Comm., 241 La. 687, 130 So.2d 652, and the authorities therein cited.

in costs will be passed on to the ultimate consumer. This is, on its face, against the declaration of policy set forth in LSA R.S. 45:161, which states that 'the public will be given the benefit of the most economic and efficient means of transportation'.

"If a private contract is to control the rates established by the Commission, it would follow that Shell Oil Company would have an equal right to come in by petition to protest any increase in rates.

"It is a certainty in economics that costs fluctuate. If the costs decrease, should not the general public benefit by a reduced rate?

"Applicant states that the reduced rate adversely affects his business. If he finds that he cannot operate at a higher rate, will he be permitted to petition for another increase for common carriers?

"Will the Commission entertain a petition by a bus or taxi operator in Opelousas to reduce the rate again because of higher costs of gasoline which adversely affect their business?

"This Court is of the opinion that, should the reduced rate be detrimental to the public interest, the Commission may take notice of such fact and order a hearing. Applicant is asking for relief because applicant's business interest, under a private contract, is being adversely affected. Business is competitive. There is no rule or law against competition.

"This Court is further of the opinion that the Commission was created to act primarily in the interest of the public, without discrimination, against the various legitimate forms of transportation, and foster sound economic conditions among all classes of carriers. 'Carriers', as mentioned in the statute, is defined in Section 162 as to not include private carriers. The rates of common carriers or contract carriers are not to be regulated with the view of permitting private carriers to compete favorably with them. What it costs a private carrier to transport his own commodity has nothing to do with the rates of common carriers. It is not in the public interest to permit a private carrier to petition and have the rates increased because he cannot compete with the reduced rate.

'Therefore, it is the opinion of this Court that the exception of no right or cause of action should have been sustained and applicant's claims dismissed. The ruling of the Louisiana Public Service Commission is, therefore, reversed."