242 So.2d 832

**George DENEGRE**

**v.**

**LOUISIANA PUBLIC SERVICE
COMMISSION et al.**

**No. 50463.**

Dec. 14, 1970.

Rehearing Denied Jan. 18, 1971.

Joseph H. Kavanaugh, Marshall B. Brinkley, Baton Rouge, for defendant-appellee.

Jones, Walker, Waechter, Poitevent, Carrere & Denegre, John W. Haygood, New Orleans, for plaintiff-appellant.

Henican, James & Cleveland, C. Ellis Henican, Carl W. Cleveland, New Orleans, for intervenors.

McCALEB, Justice.

Petitioner is appealing from a judgment of the Nineteenth Judicial District Court for the Parish of East Baton Rouge which affirmed the action of the Louisiana Public Service Commission (Order No. 10,189) denying his application for removal and relocation of certain switch tracks situated on a tract of land recorded in his name.

The property in question, located in St. Bernard Parish, is bounded by St. Claude Avenue, Bienvenue Street, Hernandez Street and Mehle Street and is traversed by the switch tracks of two railroads, New Orleans Terminal Co. and Louisiana Southern Railway Co., both of which are part of the Southern Railway System. The switch tracks were constructed thereon many years ago over rights of way granted by the predecessors in title of petitioner and at present serve the businesses conducted by Hodges Stock Yards, Inc., Ace Lumber & Box Co., International Cold Storage, Inc., Tasso Plantation Foods, Inc., Bryan Bell and Caswell P. Ellis, III.

In 1960 petitioner acquired the property [1] from New Orleans Stock Yards, Inc., hereinafter referred to as Hodges. In the act of sale, Hodges excluded therefrom and specially reserved the rights of way granted to the railway companies by Hodges' predecessor in title. These servitudes consist of two separate rights of way over the property, one granted to the predecessor in title of Louisiana Southern Railway Co. and the other to the predecessor in title of New Orleans Terminal Co. These rights

---

1. It was developed at the hearing before the Commission that title was placed in petitioner's name for purposes of convenience; that he had executed a counter letter; and that the true owners of the tract at the present time are Thomas C. Farrell, Jr. and the Successions of Joseph Merrick Jones, Jr. and Eugenie Penick Jones. When this fact was discovered, the opponents to petitioner's request moved for dismissal of his petition on the ground that he was without interest. However, subsequently, petitioner produced a power of attorney which not only authorized him to conduct these proceedings, but ratified all previous acts he had undertaken in their behalf.

On this appeal opponents insist that their motion to dismiss should be sustained. We think the motion was properly overruled in view of the power of attorney given appellant by Farrell and the executors of the successions to which we have hereinabove referred.

of way were granted by the predecessor in title of Hodges, an adjoining landowner and principal opponent in these proceedings.

Customers of the service of the railroads and owners of the adjoining properties filed opposition to petitioner's request, averring in the main that the Commission was without jurisdiction to determine the matter for the reason, among others, that the relief sought does not involve the health, safety, comfort or convenience of the public, but is solely a matter wherein petitioner seeks relief for his own personal profit and, further, that the tracks involved are part of interstate commerce and subject to the exclusive jurisdiction of the Interstate Commerce Commission.

The railroad carriers cited, New Orleans Terminal Co. and Louisiana Southern Railway Co., alleged in their answer that they make no objection to the removal and relocation of the tracks as requested by petitioner, at his sole expense, provided certain conditions are met, viz: (1) that none of the parties served by the existing switch tracks are adversely affected by the proposed removal and relocation; (2) that all property owners at interest consent to such removal and relocation; and (3) that petitioner, also at his sole expense, transfers the conventional rights of way required for the relocation of the tracks, together with all necessary permits and/or grants from the Parish of St. Bernard and other proper authorities for the crossing and/or use of the public streets and thoroughfares required in connection with such relocation.

The evidence adduced before the Commission shows that petitioner proposed to relocate, at his own expense, the right of way of Louisiana Southern Railway Co. (which traverses his property approximately in the center of the acreage) so that it will run along the westernmost boundary of the tract. The apparent purpose of the proposed change is to better utilize petitioner's property for commercial development. He makes no use of either rail service or rail facilities of these carriers. However, the intervening opponents above mentioned and their predecessors in title have been served by the railroads for approximately seventy-five years.

It was also established at the hearing that the two separate rights of way which burden the land were granted to the predecessors in title of the two railway respondents. Mr. H. C. Mauney, a Vice-President of Louisiana Southern Railway Co. and New Orleans Terminal Company, testified that, although the railroads have no objection to the proposed relocation of the tracks, if the application is granted Louisiana Southern Railway Co. will be unable to continue service to the industries whose plants extend from point D–1 to point H–1 on a map introduced in evidence as Exhibit

C. These industries have been served by Louisiana Southern, and New Orleans Terminal does not have a right of way to serve this area. Mauney stated that, in order to continue such service, an agreement would have to be worked out with Louisiana Southern (also a subsidiary company of Southern Railway System) for New Orleans Terminal to use its tracks and right of way, and this would involve obtaining permission of Hodges, the principal opponent. Mr. Mauney also testified that he did not have final authority to consent to such an agreement on behalf of Louisiana Southern, which must be obtained from the Operations Vice-President, who has not been consulted in the matter.

Hodges is served by New Orleans Terminal Co. and other opponents are served by Louisiana Southern Co. The Louisiana Southern right of way enters petitioner's property by Mehle Street, and it is used by all the tenants on the upper side of the Mississippi River. The New Orleans Terminal right of way enters the property by Hernandez Street and serves only Hodges Stock Yards, Inc.

Following the hearing the Commission, with one member dissenting, issued its Order No. 10,189 denying petitioner's request. On appeal to the district court, this action was affirmed. The reasons assigned by the district judge and the Commission are almost identical. It was their conclusion that petitioner was not entitled to the relocation requested because the tracks are located on private conventional servitudes in favor of the railroads, and petitioner purchased the land with full knowledge of the existence of the servitudes. In addition, it was deduced that, if the tracks are relocated, the servitudes in question will expire and title to the land will revert to petitioner by prescription of non-user, and that this would divest Hodges of valuable property rights, in the absence of a showing that such action would materially benefit the general public. The Commission ruled that it had no authority to order petitioner to deed a replacement servitude or servitudes to Hodges, particularly in the absence of a showing of pressing public need or convenience.

In complaining of the rulings below, petitioner declares that he did not request the Commission to make any adjudication whatever concerning the ownership of the servitudes or rights of way, as this is clearly beyond the jurisdiction of the Commission and a matter to be determined by the courts. He maintains that the Commission had jurisdiction under Article VI, Section 4 of the Louisiana Constitution to make a finding that the public convenience and necessity would not be adversely affected by the proposed relocation of the spur tracks, and that his application simply requested that the Commission authorize, permit or consent to but not order the Southern Railway Co. to alter the route of

its spur tracks crossing his property. Petitioner also strenuously argues that the relocation of the route of the spur tracks will not in any way affect the service rendered to persons presently receiving it. And he asserts that, under Article 703, 753 and 777 of the Civil Code, a servitude of passage may be changed from one place to another by the owner of the servient estate if its usage is inconvenient and burdensome, provided a place equally convenient for exercise of the servitude is offered.[2]

Alternatively, petitioner seeks a judgment reversing the ruling below and a remand to the Commission with instructions to dismiss the application as not falling within the Commission's jurisdiction. Opponents, on the other hand, again urge here that the Commission lacked jurisdiction, as the tracks are interstate in character and subject only to the jurisdiction of the Interstate Commerce Commission.

We find that the Commission had jurisdiction inasmuch as the case involved relocation of industrial lead or spur tracks, which come within the exception provided in 49 U.S.C.A. Sec. 1(22). See New Orleans Terminal Company v. Spencer, (C.A. 5th 1966) 366 F.2d 160. However, on the merits we are convinced that petitioner's request is not tenable. Normally, whenever an applicant seeks to have the tracks, a route or a station of a railroad or other carrier changed or discontinued by petition before the Public Service Commission, the petitioner is required to show that the public convenience and necessity warrants the relief sought or that it will not be adversely affected by the relocation or discontinuance.

Petitioner in this case apparently disregards this principle and proceeds on the theory that the burden is not upon him to show that the public convenience and necessity would be enhanced by the proposed relocation of the switch tracks and, further, that he is not even required to establish or, if he is, he has established the negative that the change requested is such that the public convenience and necessity would

2. The Articles of the Civil Code cited by petitioner are manifestly without application. Article 703 states that the place of the servitude of passage may be changed by the person who owes the servitude to another place which is less inconvenient to him, provided it affords the same facility to the owner of the servitude. This article is irrelevant because it, and other articles under Sections 1 through 5 of Chapter 3 of Title 4 of the Code, dealing with predial servitudes, pertains only to servitudes *imposed by* *law*. The other two articles cited by petitioner are found under Chapter 4 of the same title and apply to conventional servitudes which, like the ones involved herein, are likewise totally without application as conventional servitudes, according to Article 709, are regulated by the titles under which they are granted, and it is only where there are no written titles that the articles following Article 709 have any pertinence or unless the conventional titles contain provisions contrary to public policy.

not be adversely affected by the proposed relocation.

■■■ This position is patently erroneous. The fundamental function of the Public Service Commission is to regulate the activities of the public utilities in this State and, to this end, it is constitutionally vested by Section 4 of Article VI of the Constitution with plenary power to hear and determine all matters relating to the affairs of the utilities which affect the public interest. Hence, whenever anyone invokes the authority of the Commission to act, he must make a showing that the action requested is in the public interest or, at least, will not adversely affect the public interest. No such showing has been made herein. On the contrary, petitioner desires to change the route of the switch tracks to which the railroads hold conventional servitudes, over which they serve the public, by relocating these servitudes on another part of his property for his own private interest. Not only does he fail to show that the public interest and convenience will be served by such relocation, he submitted no proof whatever that the public convenience and necessity will not be adversely affected by the proposed relocation of the switch tracks. Indeed, although petitioner claims that the railroads have consented to the change sought, he has signally failed to prove this allegation. Both Mauney (Southern Railway Co.) and John Foster, attorney for the New Orleans Terminal Co. who testified in the case, made it very explicit in their testimony that the railroads' consent to the relocation of the tracks was predicated on certain conditions, i.e., the furnishing of suitable rights of way to replace the ones sought to be relocated, and the absence of objection from the customers being served. The customers of the carriers have voiced strenuous objections to the proposed change in service, and there is no assurance that they will not be affected thereby.

■■■ On the facts adduced in this case, it appears that the Commission's ruling is well founded. But even if this Court entertained doubt, a reversal of the Commission's decision would be unauthorized. For it is basic that the courts will not substitute their judgment or otherwise interfere with actions of the Public Service Commission "* * * save and except when they are found to be arbitrary and capricious, or reflect a clear abuse of the power reposed on it by constitutional and statutory provisions." Louisiana Tank Truck Carriers, Inc. v. Louisiana Public Service Commission, 244 La. 909, 155 So. 2d 15 (1963). Other recent cases holding that the rulings of the Public Service Commission must be accorded great weight are Texas & New Orleans Railroad Co. v. Louisiana Public Service Commission, 233 La. 787, 98 So.2d 189 (1957); Texas & Pacific Railway Co. v. Louisiana Public Service Commission, 240 La. 669, 124 So.

2d 902 (1960); United Gas Pipe Line Co. v. Louisiana Public Service Commission, 241 La. 687, 130 So.2d 652 (1961); and Arkansas & Louisiana Mo. Ry. v. Louisiana Public Service Commission, 251 La. 963, 207 So.2d 760 (1968).

For the reasons assigned, the judgment appealed from is affirmed.

BARHAM, J., concurs.

TATE, Justice (concurring).

I see the issue somewhat differently than do my brothers of the majority. I concur, however, accepting (for the time) the majority's analysis that the showing before the Public Service Commission indicates the public convenience and interest may be adversely affected should the Commission permit the petitioners to attempt to relocate the switch trackage in question.

Nevertheless, if analyzed according to what I feel to be the correct legal standards, I am not certain the showing should be interpreted as did the majority.

It seems to me the majority errs as a matter of law in holding that a petitioner before the Louisiana Public Service Commission must affirmatively show that the action proposed will not adversely affect the public interest. This burden of pleading and proof implies that, if the action proposed has neutral effects, it must nevertheless fail. I do not believe there is any

constitutional warrant for imposing such a standard, and no jurisprudential or other authority is cited for it.

In my view, the proper standard is that a petitioner may secure relief within the jurisdiction of the Commission, provided it does *not* adversely affect the public interest. The burden should thus be upon the opponents to prove, not the petitioners to negate, adverse public interest. The facts of the present case illustrate well the difference in approaches permitted by these contrasting burdens.

The petitioner owns property traversed by servitudes (according to the majority) for railway purposes. These servitudes, crossing the center of the property, prevent its use for valuable industrial purposes. By proceedings before the Public Service Commission, the petitioner is attempting to relocate this railway servitude around the edge of his property, so as to permit its utilization for other purposes.

As the majority found, permission from the Commission must be secured before any relocation can be made. Article VI, Section 4, Louisiana Constitution, provides: "The Commission shall have and exercise *all* necessary power and authority to supervise, govern, regulate and control all *common carrier railroads * * *"*, and that "The power, authority, and duties of the Commission shall affect and include *all* matters and things connected with, con-

517 518

cerning, and growing out of the service to be given or rendered by the common carriers * * *".

However, these constitutional provisions do not, as the majority states, provide that the Commission shall not exercise these plenary constitutional powers unless the petitioner alleges and proves no adverse public interest. Thus the Commission may give the petitioner the relief sought under his pleadings, although of course it should not do so if opponents prove any adverse *public* interest.

The real motivating interests concerning the application for Commission relief are based upon the *private* interests of the parties. The petitioner bought property subject to a railway servitude and therefore of lessened industrial value. He seeks to greatly enhance the property's value by relocating the trackage. The opponents' predecessors sold the property at lower price because of these tracks. They are not enthusiastic about this windfall to result to the petitioner if he can secure the relief sought. Moreover, if the petitioner's property becomes available for industrial use, their own adjacent property loses the relatively greater value it has because of its unique availability for industrial use in the vicinity.

The Commission's role, however, should be neutral in the adjudication of these competing private economic interests; at least,

insofar as they have no adverse effect upon the public's interest in the transportation facilities afforded for the general (not the private) good. And the constitutional provision relied upon does not indicate otherwise.

We must bear in mind that the only relief sought by the petitioner is a declaration that the moving of the trackage, at the petitioner's expense, is consistent with the public interest and will not affect the ability of the railway carriers to continue to render present services.

The petitioner concedes that, before the servitude may be relocated, he must first secure the consent of the carriers, that he must furnish the alternative right of way servitude, that he must secure judicial approval of the relocation of the servitude insofar as it affects the private rights of the parties, and that there must not be any disruption in service to the public caused by the relocation.

If this showing is made, I believe the petitioner is entitled to the relief sought. That is, he need not affirmatively prove any benefit to the public interest, nor affirmatively negate any detriment to the public interest. If the action sought has neutral effects, the Commission should approve; for the Commission's purpose is to act in the public interest, but to be neutral insofar as any private interests of the parties are concerned.

The petitioner apparently seeks this prior Commission approval in order to lay a predicate to exercise his property right, as owner of the land, to secure a judicial adjudication under Civil Code Article 777 for a relocation of the servitude to a less burdensome place on his property. The servitude-owner has refused him this relief.

Without Commission approval, the court might refuse the owner this relief to which he is otherwise entitled.

Article 777 provides:

"The owner of the estate which owes the servitude can do nothing tending to diminish its use, or to make it more inconvenient."

"Thus he can not change the condition of the premises, nor transfer the exercise of the servitude to a place different from that on which it was assigned in the first instance."

"Yet if this primitive assignment has become more burdensome to the owner of the estate which owes the servitude, or if he is thereby prevented from making advantageous repairs on his estate, he may offer to the owner of the other estate a place equally convenient for the exercise of his rights, and the owner of the estate to which the servitude is due can not refuse it."

In the majority opinion (footnote 2 thereof), incidentally, there is erroneous dicta affecting the issue of judicial action relocating a conventional servitude as authorized by Article 777.

Civil Code Article 777 is found in Chapter 4 of Title IV of Book II, and it relates thus, both to conventional and voluntary servitudes. Article 777 therefore apparently applies to the present conventional servitude. It not only provides that the owner of the servient estate can do nothing to make the servitude more inconvenient; it also provides, par. 2, that he can't change the location, but "*Yet*", par. 3, if the servitude becomes more burdensome, he may require the owner of the servitude to accept "a place equally convenient for the exercise" of the servitude. This provision comes directly from Art. 701 of the Code Napoleon. The plain intent is to permit the court to displace the site of the previous servitude, even if established by agreement or judgment, when the exercise of the servitude is localized at a place too burdensome upon the encumbered estate; the court, to weigh the competing interests in the exercise of judicial discretion. Planiol, Civil Law Treatise, Volume I, Section 2971 (LSLI translation, 1959).

Thus, all conventional servitudes are created subject to this possibility of judicial modification in the future.

This is in accord with fundamental civilian principles: The interests of society are furthered by the free use of land by pri-

vate owners for its most advantageous social utility. The full ownership of land is favored, as against restrictions upon its use imposed decades or even centuries in the past; provided that no prejudice is caused to property rights [1] conferred by conventional agreement of the parties or their predecessors in title.

I respectfully concur, subject to these reservations.

1. Here, the opponents' property right in the servitude is limited to the right to receive rail access through the petitioner's property. The particular location contractually agreed upon is an important

On Application for Rehearing

PER CURIAM.

Although Footnote 2 is regarded as obiter dicta, this court recalls the statement therein that Civil Code Articles 753 and 777 do not apply to servitudes acquired by title.

The application for rehearing is denied.

McCALEB, C. J., and HAMLIN, J., concur in the denial of a rehearing.

aspect of this right; but the right was created subject to judicial relocation. under Article 777, if it becomes unduly burdensome in the course of time.