STOULIG, Judge.
Plaintiffs, Thomas C. Farrell, Jr., Joseph Merrick Jones, Susan Jones Lane and Eugenie Jones Huger, filed this suit to compel defendants, Hodges Stock Yards, Inc., Louisiana Southern Railway Company and the New Orleans Terminal Company, to *747 remove all railroad tracks and appurtenances constructed across their property in St. Bernard Parish under two conventional servitudes which they allege have expired.[1] Plaintiffs aver the rights-of-way, granted to permit cattlemen to move livestock to stockyards and slaughterhouses, had a dissolving condition which stipulated it would be extinguished when the trackage was no longer used for this purpose. Plaintiffs claim the tracks have not been used to service the cattle business since 1966. In the alternative, plaintiffs seek cancellation of the servitudes if defendants are not ordered to remove the tracks. Further in the alternative, should the court refuse to adjudicate the servitudes to be extinguished, they seek permission to relocate the tracks to a less burdensome area of their land.
Multiple dilatory, declinatory, and peremptory exceptions were overruled. Then defendants answered and (1) denied the occurrence of a dissolving condition and (2) alternatively, sought recognition of their right to the servitudes under the public utility unopposed usage theory jurispruden-tially created as the St. Julien doctrine.[2] After this appeal was argued, the Supreme Court reversed the St. Julien line of cases and repudiated this extracodal mode of acquiring servitudes.[3] The application of that result to this case will be considered later.
The trial court rendered judgment declaring the servitudes extinguished and can-celled. Defendants have appealed.
The servitudes in question cut through the middle of a large tract of property acquired by George Denegre, acting for plaintiff Thomas C. Farrell, Jr., and for Joseph Merrick Jones (since deceased, whose interest has devolved on the other three plaintiffs). The property, bounded by St. Claude Avenue, Bienvenue Street, Hernandez Street and Mehle Street, would appreciate in value if the tracks were either removed or relocated. Defendant Louisiana Southern Railway Company traces its right of servitude to a March 12, 1891 grant by Crescent City Live Stock Landing & Slaughter House Company to facilitate shipment of cattle by rail. This instrument contained a dissolving condition. We quote:
“ * * * and this grant of way shall be exclusively used for operating cattle-cars and such other rolling stock as may be required for the purposes of cattle yards and slaughter houses and attendant factories; and shall continue in full force as long as the said property of the said Crescent City Live Stock Landing & Slaughter House Company shall be used for the business for which it is now used or any other of like nature and no longer. * * * ”
Defendant New Orleans Terminal Company acquired its right to construct, operate and maintain a switch or spur track from Crescent City Live Stock Landing & Slaughter House Company on August 12, 1908 to enhance the facilities for handling livestock and products of the grantor, its attendant factories or industries. This agreement also contains a dissolution provision which reads:
“The right of way granted herein shall continue in full force and effect from the date of signing hereof as long as the *748 property of the First Part[y] continues to be used for the business for which it is now used, or any other business of like nature, and no longer.”
When Denegre acquired from New Orleans Stock Yards, Inc. (the corporation’s name was changed later to Hodges Stock Yards, Inc.), the act recited the transfer was made subject to certain leases and reservations listed on Exhibit A entitled “RESERVATIONS.” We quote those pertaining to the railroad servitudes:
“(a) The agreement of Switch privileges granted by Crescent City Stock Yard and Slaughter House Company, Limited, and New Orleans Terminal Company, dated August 12, 1908, registered in MOB 17, Folio 158.

(c) The grant of strip of land by Crescent City Stock Yard and Slaughter House Company, Limited, et al, to the New Orleans and Western Railroad Company, as per Act before George C. Preot, Notary Public, dated October 15, 1895, registered in COB 18, Folio 461.
(d) Right-of-way, granted by the Crescent City Live Stock Landing and Slaughter House Company, to the New Orleans Gulf and Railroad Company, of the right-of-way over and across the land of said Company, as more fully shown in Act of Deposit, executed before Gustave Legar-deur, Jr., Notary Public, for the Parish of Orleans, State of Louisiana, dated March 17, 1891.

(f) The rights-of-way, servitudes and privileges established in the Act whereby the Crescent City Stock Yard and Slaughter House Company, Limited, conveyed' other properties in the same location, as per act executed before Conrad G. Collins, Notary Public, dated April 30, 1921, registered in COB 28, Folio 80.”
In 1966 plaintiffs applied unsuccessfully to the Louisiana Public Service Commission for permission to relocate the railroad tracks burdening their property. The Supreme Court affirmed this result in Denegre v. Louisiana Public Service Commission,[4] When plaintiffs made a second attempt to improve the value of their land by removing or relocating the tracks by filing this suit, defendants urged numerous exceptions, some of which they based on the opinion in the appeal from the Public Service Commission ruling. Because they have been re-urged on this appeal, we will briefly consider them before passing to the merits.
RES JUDICATA
In essence defendants contend plaintiffs have previously litigated their rights to relocate the track and the result in that case should be res judicata to this section. To maintain this exception it must appear from the record the requisites of C.C. art. 2286 have been met. It provides:
“The authority of the thing adjudged takes place only with respect to what was the object of the judgment. The thing demanded must be the same; the demand must be founded on the same cause of action; the demand must be between the same parties, and formed by them against each other in the same quality.”
The object of the first suit (filed in 1966) was to obtain permission to relocate the railroad tracks to a more convenient site, and the viability of the conventional servitudes was not at issue. According to the evidence adduced in this case, the condition that plaintiffs allege caused the servitudes to be dissolved did not occur until after or during 1966. Plaintiffs’ request was rejected in the Public Service Commission case because it failed to show it was warranted by public necessity or that the relief sought would not adversely affect those served by the tracks sought to be removed. This suit has for its object *749 the extinguishment of the servitudes through nonuser for the purposes they were dedicated. The issues are entirely different.
Johnson v. Lemons, [5] cited by defendants, is inapposite. There the plea of res judi-cata was maintained because Johnson attempted to reurge his claim to ownership of a fractional interest in immovable property in a petitory action after the same claim, based on the same titles, had been rejected in a concursus proceeding.
The exception of res judicata was properly overruled.
NONJOINDER
Defendants urge this matter cannot be adjudicated without George Denegre, record owner of the tract, being joined as a party plaintiff. Interestingly enough, these same defendants objected to Denegre appearing as the litigant in the first suit and urged his petition should be dismissed for want of interest. To cure this objection Denegre obtained a power of attorney from the actual owners authorizing him to act on their behalf and ratifying the actions already taken. The Supreme Court maintained his right to bring the action and in footnote 1 of Denegre v. Louisiana Public Service Commission, 257 La. 503, 242 So.2d 832, 833-34 (1970), noted:
“It was developed at the hearing before the Commission that title was placed in petitioner’s name for purposes of convenience ; that he had executed a counter letter; and that the true owners of the tract at the present time are Thomas C. Farrell, Jr. and the Successions of Joseph Merrick Jones, Jr. and Eugenie Penick Jones. When this fact was discovered, the opponents to petitioner’s request moved for dismissal of his petition on the ground that he was without interest. However, subsequently, petitioner produced a power of attorney which not only authorized him to conduct these proceedings, but ratified all previous acts he had undertaken in their behalf.
“On this appeal opponents insist that their motion to dismiss should be sustained. We think the motion was properly overruled in view of the power of attorney given appellant by Farrell and the executors of the successions to which we have hereinabove referred.”
In this case defendants argue C.C.P. art. 681 and the jurisprudence interpreting it require the record owner of immovable property to bring any action that would effect title. This article states “ * * * an action can be brought only by a person having a real and actual interest * * * Denegre has no real and actual interest. He is simply an agent representing disclosed principals.
The cases cited by defendants are distinguishable. Tennessee Gas Transmission Company v. Derouen[6] held naked owners are indispensable parties defendant in an expropriation suit. Unlike this case, the absent litigants had a real and actual interest because at the termination of the usufruct ownership would be perfected in them.[7] Amrheim v. Champion,[8] a decision of Code of Practice vintage, held that under a special statute [9] a record owner must be joined in a suit to confirm a tax title. While the general rule now set forth by C.C.P. art. 681 was at that time somewhat similarly stated by C.P. art. 15, it was not applied to determine the joinder issue.
We hold Denegre need not be joined as a party plaintiff. 'While his appearance as a litigant would not have been objectionable under these particular circumstances and possibly his joinder would have been more expedient than defending his *750 absence as a plaintiff, nonetheless plaintiffs correctly point out the exception is meritless.
NO CAUSE OF ACTION
This exception is predicated on the hypothesis plaintiffs never acquired the land upon which the tracks are laid; therefore, they can assert no cause of action. They rely on the previously quoted “reservations” in claiming the servitudes were retained by plaintiffs’ vendor, Hodges. We disagree. The deed simply imposes on plaintiffs the obligation of honoring the terms and conditions of the right-of-way grants enumerated. It also confers the same right to have the servitudes dissolved should the defendants fail to use them for the purpose for which they were dedicated. Had the deed conveyed all the land in the tract, less and except the land upon which the tracks and spurs are laid and Hodges actually excepted the strip of land itself from his conveyance, defendants’ position would be well founded. But this is not the case. A similar contention was rejected in Welsh Southern Oil Co. v. Scurlock Oil Co.[10] and we quote as dispositive of the argument before us the rationalization and resolution reached in that case:
“The central contention of the plaintiffs’ suit is that, when Smedley’s wife sold the 86-acre parent tract in 1901 to Davidson et al., this 1901 conveyance expressly did not include the railroad right of way. The defendants are the descendants thus contend that they, as and their mineral lessees. The plaintiff descendants thus contends that they, as Smedley’s heirs, still own the unconvey-ed land (subject to the railroad right of way) and, most pertinently, the share of mineral production attributable to this surface acreage.
“Essentially, the plaintiffs’ central contention is founded upon the language of the 1901 conveyance by Mrs. Smedley to Davidson et al. This warranty deed described the property conveyed as an 86-acre tract ‘subject to and less a right of way 200 feet wide across said land for La.W.R.R.Co.’ See Exhibit 8, Tr. 134. The plaintiffs contend that their ancestors in title, the Smedleys, reserved by this excepting clause their title to the land itself across which the servitude of right of way existed in favor of the railroad company.
“However, the trial court held that the deed by which Mrs. Smedley sold to Davidson et al, the 86-acre tract ‘subject to and less a right of way’, conveyed the entire acreage described, subject only to a servitude of right of way across it — that the excepting clause reserved only the servitude from the conveyance, and not the land underlying it.
“In so holding, the trial court correctly relied upon decisions which under similar circumstances held that the conveyance of land subject to and less a right of way did not except from the conveyance the land described, but only a servitude across it. Rock Island A. & L. R. Co. v. Guillory et al., 205 La. 141, 17 So.2d 13; Sohio Petroleum Co. v. Hebert, La.App. 3 Cir., 146 So.2d 530. These decisions are based upon the general principle applicable that, where the language making an exception or reservation in a deed is doubtful, it must be construed most favorably to the grantee, as well as upon the principle that in construing conveyances the term ‘right of way’, in the absence of other indication, generally denotes a servitude only rather than also the surface acreage across which the right of way passes. See also Esso Standard Oil Co. v. Texas & New Orleans Railroad Co., La.App. 3 Cir., 127 So.2d 551.” 201 So.2d at 378.
PRESCRIPTION
Defendants, without getting to specific, argue the railroads have acquired *751 prescriptive title to the realty burdened with the right-of-way or have at least acquired the right to have their tracks remain for their future use. We have reviewed the codal articles cited (C.C. arts. 3528 et seq.) and find no reason to maintain the exception of prescription. As we view it the tracks were used in 1966 for the purpose for which they were dedicated and not even the shortest prescriptive period of 10 years would have run before this suit was filed, if indeed, it would he applicable.
LACK OF JURISDICTION
Defendants contend La.Const. 1974 Art. 4, § 21 and L.R.S. 45:1165 vest exclusive jurisdiction to remove or destroy tracks in the Louisiana Public Service Commission. The constitutional article gives the Commission power to regulate common carriers and public utilities in the State and gives it general authority to adopt and administer the necessary rules to carry out this purpose. The revised statute sets up, in general terms, the right of commercial property owners to obtain rail service. Neither can be construed to divest state courts of the jurisdiction to adjudicate the validity of title to realty encumbered with servitude. To accomplish the objects of L.R.S. 45:1165 the Commission may authorize the railroads under its jurisdiction to expropriate certain lands to accomplish its purpose, but these takings are always subject to judicial review should the landowner demand it. The exception attacking jurisdiction is overruled.
MERITS
The servitude grants provided for their own dissolution should the rights-of-way ever not be used exclusively for freight hauling pertaining to the cattle business and stockyard. It appears from the record the last rail shipments of livestock across either of the two servitudes was made in 1966.[11] At present the rails are used to service businesses involved with woodcraft and/or housewares. While there is a cold storage meat facility in the area, its owner did not testify he receives shipments of meat by rail. Apparently he uses trucks to ship and receive merchandise.
While we do not think a cold storage plant operation would constitute a modern successor to the type of business for which these grants were originally made, we need not decide this issue because the cold storage meat facility does not use rail service. Accordingly we agree with the trial court’s conclusion plaintiffs have a right to have the servitudes that burden their property declared extinguished and cancelled under C.C. art. 783, which provides in part: “Servitudes are extinguished: * * * 6. * * * by the happening of . the dissolving condition attached to the servitude.”
Finally, defendants contend the railroads’ unopposed usage of these tracks for many years confers on them servitudes under the St. Julien theory. We question the factual premises upon which the contention is based, in view of plaintiffs’ opposition to defendants’ occupancy even before the extinguishment of the servitudes. The Supreme Court decision in Lake, Inc. v. Louisiana Power & Light Company, La., 330 So.2d 914, proceeding No. 57085, of March 29, 1976, renders a discussion of the argument academic. It expressly overruled this doctrine.
For the reasons assigned, the judgment appealed from is affirmed and it is recognized that the servitudes described herein *752 are extinguished and cancelled insofar as they affect the following described property:
“Those certain tracts or portions of ground, together with all the buildings and improvements thereon, and all the rights, ways, privileges, servitudes, appertenances and advantages there unto belonging to or anywise appertaining, situated in the Parish of St. Bernard, State of Louisiana. Said tracts being designated as Tracts ‘A, B, C, D, E, F, and G’ on a plan of survey by E. L. Eustis, Civil Engineer and Surveyor, dated December 28, 1959, a copy of which is annexed hereto and according to which said tracts measures as follows:
“Tract ‘A’, bounded by St. Claude Avenue, Aycock, Royal, and Mehle Streets, and is measured by starting at a point designated by the Letter ‘A’, on St. Claude Avenue, and thence running from said point in a southerly direction, towards Royal Street for a distance of 200 feet, to a point marked ‘B’, thence from said point marked ‘B’, on a line parallel to St. Claude Avenue, and running in a direction of, and to Ay-cock Street, a distance of 200 feet, to the letter ‘C’, thence from said point marked ‘C’, on a line fronting Aycock Street, and running in the direction of, and to the corner of Royal and Aycock Streets, a distance of 1276 feet, 8 inches, 6 lines, to a point marked ‘D’, thence from said point marked ‘D’, and running on a line fronting on Royal Street, in the direction of Mehle Street, for a distance of 355 feet, 9 inches, 4 lines, to a point marked ‘E’, thence from said point marked ‘E’, on a line parallel to Mehle Street, and running in the direction of St. Claude Avenue, for a distance of 1085 feet, 3 inches, 6 lines, to a point marked ‘F’ thence from said point ‘F’, on a line parallel to St. Claude Avenue, and running into a direction of, and to Mehle Street, for a distance of 100 feet, to the point marked ‘G’, thence from said point marked ‘G’, on a line fronting on Mehle Street, and running in the direction of, and to the corner of St. Claude Avenue and Mehle Street for a distance of 391 feet, 5 inches, to the point marked ‘H’, thence from said point marked ‘H’, on a line fronting on St. Claude Avenue, and running in the direction of Aycock Street for a distance of 255 feet, 9 inches, 4 lines, to the point of beginning, designated by Letter ‘A’.
“Tract ‘B’, bounded by St. Claude Avenue, Hernandez, Royal and Aycock Streets, and said tract is measured by starting at a point marked by the letter ‘J’, on St. Claude Avenue, and running from said point, on a line fronting on St. Claude Avenue, a distance of 85 feet, 3 inches, 2 lines (actual measurement), 80 feet, 7 inches, and no lines (title measurement), to a point marked ‘K’, thence from said point marked ‘K’, on a line fronting on Hernandez Street, and running in the direction of, and to the corner of Royal Street and Hernandez Street, for a distance of 1476 feet, 8 inches, 6 lines, to the point marked ‘U, thence from said point marked ‘L’, on a line fronting on Royal Street, and running in the direction of, and to the intersection of Aycock and Royal Streets, for a distance of 248 feet, 3 inches, 3 lines, to the point marked ‘M’, thence from said point marked ‘M’, on a line fronting on Aycock Street, and running in the direction of St. Claude Avenue, a distance of 1356 feet, 8 inches, 6 lines, to the point marked ‘N’, thence from said point marked ‘N’, on a line parallel to St. Claude Avenue, and running in the direction of Hernandez Street, for a distance of 60 feet, to the point marked ‘O’, thence from said point marked 'O’, and running on a line parallel to Mehle Street, in the direction of Royal Street, for a distance of 55 feet, to the point marked ‘P’, thence from said point marked ‘P’, on a line parallel to St. Claude Avenue, running in the direction of Hernandez Street, for a distance of 135 feet, to the point marked ‘Q’, thence from said point marked ‘Q’, running on a line parallel to Hernandez Street, and running in the direction of, and to St. Claude Avenue, for a distance of 175 feet, to the point of beginning marked by the letter ‘J’. *753 “Tract ‘C’, bounded by Royal, Hernandez, Bienvenue and Aycock Streets, and which tract is measured by starting at the point marked ‘S’, at the intersection of Royal and Hernandez Streets, and thence running on a line fronting on Royal Street, in the direction of, and to Aycock Street, for a distance of 248 feet, 2 inches, 5 lines, to the point marked ‘T’, at the intersection of Aycock and Royal Streets, and thence from said point marked ‘T’, on a line fronting on Aycock Street, and running in the direction of Bienvenue Street, a distance of 309 feet, 3 inches, no lines, to a point marked ‘U’, thence from said point marked ‘U’, on a line parallel to Royal Street, and running in the direction of Hernandez Street, a distance of 136 feet, 2 inches, 2 lines, to a point marked ‘V’, thence from said point marked ‘V’, on a line parallel to Hernandez Street, and running in the direction of Bienvenue Street, a distance of 49 feet, no inches, 2 lines, to a point marked ‘W’, thence from said point marked ‘W’, on a line parallel to Royal Street, running in the direction of, and to Aycock Street, a distance of 136 feet, 2 inches, 2 lines, to a point marked ‘X’, thence from said point marked ‘X’, on a line fronting on Aycock Street, and running in the direction of Bienvenue Street, a distance of 318 feet, 6 inches, 4 lines, to the point marked ‘Y’, thence from said point marked ‘Y’, on a line parallel to Bienvenue Street, and running in the direction of, and to Hernandez Street, a distance of 247 feet, 3 inches, 6 lines, to the point marked ‘Z’, thence from said point marked ‘Z’, on a line fronting on Hernandez Street, and running in the direction of Royal Street, a distance of 676 feet, 9 inches, 6 lines, to the point of beginning, marked by the letter ‘S’.
“Tract ‘D’, bounded by Bienvenue, Aycock, Royal, and Hernandez Streets, and is measured by starting at the point marked ‘A-A’, at the intersection of Aycock and Bienvenue Streets, running on a line fronting on Aycock Street, in the direction of Royal Street, for a distance of 104 feet, no inches, no lines, to the point marked ‘A-B’, thence from said point marked ‘A-B’, running on a line parallel to Bien-venue Street, and running in the direction of, and to Hernandez Street, for a distance of 247 feet, 1 inch, no lines, to the point marked ‘A-C’, thence from said point marked ‘A-C’, running on a line fronting Hernandez Street, in the direction of Bien-venue Street, for a distance of 104 feet, no inches, no lines, to the intersection of Bienvenue and Hernandez Streets, marked by the point designated as ‘A-D’, thence from said point marked ‘A-D’, running on a line fronting on Bienvenue Street, and running in the direction of, and to Aycock Street, for a distance of 246 feet, 11 inches, 2 lines, to the point of beginning, designated by the letters ‘A-A’.
“Tract ‘E’, bounded by Bienvenue, Aycock, Pontalba and Hernandez Streets, and said tract is measured by starting at the point marked ‘A-E’, at the intersection of Bien-venue and Hernandez Streets, and thence running along a line fronting Bienvenue Street, in the direction of Aycock Street, for a distance of 246 feet, 10 inches, 4 lines, to the point marked ‘A-F’, at the intersection of Bienvenue and Aycock Streets, thence from said point marked ‘A-F’, and running along a line fronting Aycock Street, in the direction of, and to Pontalba Street, for a distance of 512 feet, 9 inches, and no lines, to the point marked ‘A-G’, at the intersection of Aycock and Pontalba Streets, and thence from said point ‘A-G’, running along a line fronting Pontalba Street, in the direction of Hernandez Street, for a distance of 136 feet, 2 inches, 2 lines, to the point marked ‘A-H’, thence from said point marked ‘A-H’, on a line parallel to Hernandez Street, and running in the direction of Bienvenue Street, for a distance of 183 feet, 9 inches, no lines, to a point marked ‘A-J’, thence from said point marked ‘A-J’, on a line parallel to Pontalba Street, and running in the direction of, and to Hernandez Street, for a distance of 110 feet, no inches, no lines, to the point marked ‘A-K’, thence from said point marked ‘A-K’, on a line fronting on Hernandez *754 Street, and running in the direction of, and to the corner of Bienvenue and Hernandez Streets, for a distance of 329 feet, no inches, no lines, to the point of beginning, designated by the letters ‘A-E’.
“Less and except, from the above tract ‘E’, that portion of ground, designated as ‘Old Jail’, which commences at a distance of 244 feet, 5 inches, and no lines, from the corner of Bienvenue and Hernandez Streets, and measures 44 feet, 1 inch, no lines, fronting on Hernandez Street, the same width in the rear, by a depth of 51 feet, 6 inches, no lines, between equal and parallel lines.
“Tract ‘F’, bounded by Pontalba, Aycock, North Peters and Heranadez Streets, and is measured by starting at the point marked by the letters ‘A-L’, located at the intersection of Pontalba and Aycock Streets, and thence running on a line fronting on Aycock Street, and running in the direction of, and to North Peters Street, for a distance of 401 feet, 3 inches, 2 lines (actual measurement), 379 feet, no inches, 5 lines (title measurement), to the point marked ‘A-M’, at the intersection of Aycock and North Peters Streets, thence from point ‘A-M’, on a line fronting on North Peters Street, and running diagonally in the direction of Hernandez Street, for a distance of 179 feet, 11 inches, 5 lines, to the point marked ‘A-N’, thence from said point marked ‘A-N’, on a line parallel to Hernandez Street, and running in the direction of Pontalba Street, for a distance of 168 feet, no inches, 5 lines, to the point marked ‘A-O’, thence from said point marked ‘A-O’, on a line parallel to Pontalba Street, running in the direction of Hernandez Street, for a distance of 63 feet, 9 inches, no lines, to the point marked ‘A-P’, on Hernandez Street, and thence from said point marked ‘A-P’, on a line fronting on Hernandez Street, and running in the direction of Pontalba Street, for a distance of 95 feet, 8 inches, 5 lines, to a point marked ‘A-Q’, thence from said point marked ‘A-Q’, on a line parallel to Pontalba Street, and running in the direction of Aycock Street, for a distance of 94 feet, 6 inches, no lines, to the point marked ‘A-R’, thence from said point marked ‘A-R’, on a line parallel to Hernandez Street, and running in the direction of Pontalba Street, for a distance of 30 feet, to the point marked ‘A-S’, thence from said point marked ‘A-S’, on a line parallel to Pontalba Street, and running in the direction of Aycock Street, for a distance of 15 feet, 6 inches, to the point marked ‘A-T’, thence from said point marked ‘A-T’, on a line parallel to Hernandez Street, and running in the direction of, and to Pontalba Street, for a distance of 135 feet, to the point marked ‘A-U’, on Pontalba Street, and thence from said point marked ‘A-U’, on a line fronting Pontalba Street, and running in the direction of, and to Aycock Street, for a distance of 136 feet, 1 inch, 4 lines, to the point of beginning, marked by the letters ‘A-L’.
“Tract ‘G’, bounded by Royal, Aycock, Bienvenue and Esteban Streets, and is measured by starting at the intersection of Royal and Aycock Streets at the point marked by the letters ‘A-V’, and thence from said point marked ‘A-V’, on a line fronting Royal Street, and running in the direction of Esteban Street, for a distance of 137 feet, 2 inches, no lines, to the point marked ‘A-W’, thence from said point marked ‘A-W’, on a line parallel to Esteban Street, and running in the direction of Bienvenue Street, for a distance of 309 feet, 3 inches, no lines, to the point marked ‘A-X’, thence from said point marked ‘A-X’, on a line parallel to Royal Street, and running in the direction of Esteban Street, for a distance of 16 feet, 8 inches, 2 lines, to the point marked ‘A-Y’, thence from said point marked ‘A-Y’, on a line parallel to Esteban Street, and running in the direction of Bienvenue Street, for a distance of 367 feet, 6 inches, 6 lines, to the point marked ‘A-Z’, thence from point marked ‘A-Z’, on a line parallel to Bien-venue Street, and running in the direction of, and to Aycock Street, for a distance of 153 feet, 10 inches, 2 lines, to the point marked ‘B-A’, located on Aycock Street, *755 and thence from said point marked ‘B-A’, located on Aycock Street, and running in the direction of, and to Royal Street, for a distance of 676 feet, 6 inches, 6 lines, to the point of beginning, at the intersection of Royal and Aycock Streets, designated by the letters ‘A-V’.
“Tract ‘A’ is composed of parts of original Squares ‘N, O, Q, R, T, U, X, and Y’.
“Tract ‘B’ is composed of all of original Squares ‘P, S, V,’ and part of original Square ‘Z’.
“Tract ‘C’ is composed of all original Squares ‘J and M’.
“Tract ‘D’ is composed of part of original Square ‘G’.
“Tract ‘E’ is composed of part of original Square ‘D’.
“Tract ‘F’ is composed of part of original Square ‘C’.
“Tract ‘G’ is composed of parts of original Squares T and L\”
Defendants are to pay all costs.

AFFIRMED.

. The servitudes are: (a) the agreement of switch privileges granted by Crescent City Stock Yard & Slaughter House Company and the New Orleans Terminal Company dated August 12, 1908, registered in MOB 17, Folio 158 in the Parish of St. Bernard; and (b) right-of-way granted by the Crescent City Live Stock Landing and Slaughter House Company to the New Orleans and Gulf Railroad Company over and across the land of said company as more fully shown in Act of Deposit executed before Gustave Legardeur, Jr., Notary Public for the Parish of Orleans, State of Louisiana, dated March 17, 1891.

. St. Julien v. Morgan L. & T. R. Co., 35 La.Ann. 924 (1883).

. Lake, Inc. v. Louisiana Power & Light Company, La., 330 So.2d 914. Proceeding No. 57085, rendered March 29, 1976.

. 257 La. 503, 242 So.2d 832 (1970).

. 157 So.2d 752 (La.App.2d Cir. 1963).

. 239 La. 467, 118 So.2d 889 (1960).

. C.C. art. 625.

. 9 Orl.Ai>p. 246 (1912).

. La.Acts 1898 No. 101.

. 201 So.2d 376 (La.App.3d Cir. 1967).

. H. C. Mauney, vice president of both the New Orleans Terminal Company and the Louisiana Southern Railway Company, testified the last rail shipment was made in 1966 when three cars of sheep were moved over the New Orleans Terminal Company tracks for the purpose of resting, feeding and watering them. They were later reloaded and shipped out.